ALDEN SMITH, ADMINISTRATOR, *vs.* THE MOODUS WATER POWER COMPANY.

A declaration alleged that a certain pond on which land in the possession of the plaintiff bordered and which constituted a boundary and a watering place, had been greatly lowered by the deepening of a drain by one *B,* and that the defendants had ever since wrongfully kept, maintained, and continued the drain so deepened. Held on error that this was a sufficient allegation of positive wrongful acts of the defendants by which the drain had been kept open.

The action was brought under the act of 1855, (Rev. of 1866, p. 407, sec. 25,) which provides that executors and administrators shall have the care and control of the real estate of the decedents during the settlement of their estates. Held that an averment that the plaintiff was administrator of the estate of *S,* and as such was in lawful possession of the land, was a sufficient averment that it was during the settlement of the estate, and that the land belonged to the estate of *S.*

ACTION on the case, brought to the superior court for Middlesex county, by the plaintiff as administrator on the estate of Jeremiah Smith, deceased, for an injury to the land of the deceased by the defendants, a joint stock corporation, in keeping up and continuing a drain previously dug wrong-

fnlly by others, by which a pond upon which the land bordered was in part drawn off.

The declaration averred that the plaintiff was the duly appointed and qualified administrator of the said Jeremiah Smith, and that on or about the 9th day of March, 1864, and while he was such administrator, he became, and was by virtue of being such administrator, duly and lawfully possessed of a certain tract of land lying along the western and southern shores of Bashan Pond in the town of East Haddam, and bounded in part northerly by said pond and northwesterly by the pond road, so called, and extending from said road on the northwest side along the shore of said pond in a southwesterly direction to Cook's Island, so called, on the south side of said pond; and also in the capacity aforesaid had the legal right to the water of the said Bashan Pond for agricultural and domestic purposes, and especially for watering his cattle therein, and for part boundaries and enclosure of the said tract of land, and had the legal right to have the water of said pond kept and maintained in the same condition, at the same height, and of the same quantity and volume, as it existed and was naturally in the life-time of the said Jeremiah Smith, previous to the excavation and enlargement in the outlet of said pond, which was made during the life-time of said deceased by the defendants or any other person or persons. And the plaintiff says that on or about the 10th day of July, 1860, Edward P. Brownell, of said East Haddam, acting for himself or for and in behalf of the defendants and for their benefit, did, without law or right and contrary to the mind and will of the said Jeremiah Smith, then in life but since deceased as aforesaid, excavate, deepen and enlarge the outlet of said pond, whereby a much larger and greater quantity of the water thereof was drained away and caused to flow out of the same than had theretofore and would otherwise naturally have drained and flowed therefrom, and whereby the water in said pond was lessened in depth six feet or thereabouts. And the plaintiff, as such administrator, says that the defendants, on the said 9th day of March, 1864, and during all the time since the said last men-

tioned day down to the time of the commencement of this suit, with intent to injure and prejudice the plaintiff in the premises, have wrongfully, unjustly and injuriously kept, maintained and continued the said outlet of said pond in the same condition so deepened and enlarged by the said Brownell in manner aforesaid, and by reason of such wrongful, unjust and injurious continuance of the same the plaintiff has, during all the time aforesaid, been greatly injured, inconvenienced and damnified in the use, occupation and possession of said tract of land, and in the use of the water of said pond for watering his cattle, and other purposes; and that by reason of the said wrongful and unjust doings of the defendants, the premises aforesaid became and were unenclosed in part, thrown open to the public highway, and exposed to depredation of cattle and other animals running at large, and his own cattle were allowed to go and did go astray to his great inconvenience and expense, and that the plaintiff has been compelled to expend a large sum of money, to wit, $200, in and for the erection of fences and keeping up of the same on the land adjoining said pond from which the water by said unnatural drainage, so as aforesaid caused, had receded; all of which is to the damage of the plaintiff, as such administrator, the sum of two thousand dollars, to recover which this suit is brought.

The case was tried to the jury before *Phelps, J.,* upon the general issue, and a verdict rendered for the plaintiff for $300 damages. The defendants thereupon moved in arrest of judgment, for the insufficiency of the declaration, which motion was overruled and judgment rendered on the verdict. They then filed a motion in error and brought the record before this court for revision, assigning the following errors:—

That the plaintiff's declaration was wholly insufficient in the law to warrant any judgment to be rendered thereon in favor of the plaintiff. 1st. Because there is no averment that the estate of Jeremiah Smith, of which the plaintiff was administrator, was in course of settlement when the suit was commenced or when the injury complained of transpired. 2d. Because there is no averment that the land referred to belonged to or formed any part of said estate, or that the

Smith *v.* Moodus Water Power Company.

same was not specifically devised, nor that said Jeremiah Smith died intestate.* 3d. Because there is no averment that the defendants enlarged the outlet, nor that they owned or had any control over it at any time, nor that any duty devolved on them to restore the outlet of the pond to its former condition, or as it was before it was opened by said Brownell.

*Waldo* and *Culver*, for the plaintiffs in error.

1. The declaration does not show such a right in the plaintiff to this land as will entitle him to maintain an action for an injury thereto. At common law no action will lie in favor of an administrator for an injury to the freehold. The title to real estate on the decease of its owner vests in the heirs at law, and not in the executor or administrator of the deceased. 1 Swift Dig., 444; *Goodrich* v. *Thompson*, 4 Day, 215; *Little* v. *Conant*, 2 Pick., 527. The only right the plaintiff as administrator of Jeremiah Smith can have to bring an action for an injury to the real estate of his intestate, is derived from the statute of 1855. General Stat., Rev. 1866, p. 407, sec. 25. And the declaration should contain facts sufficient to bring the case within the provisions of this statute. But there is no allegation that Bashan Pond or its outlet was in the possession of the plaintiff, or that the land described in the declaration, this pond, or the right to use its waters for any purpose, ever belonged to or was the property of Jeremiah Smith; nor is it averred that Smith's estate is in a course of settlement, or that he died intestate, or that this property was not specifically devised, or that it was wanted to

---

* The act of 1855, under which the plaintiff as administrator had the possession of the land, is as follows.—Revision of 1866, p. 407, sec. 25 :—

" The executors and administrators of deceased persons shall, during the settlement of the estates of such decedents, have the possession, care and control of the real estate of such decedents in the same manner as of the personal estate ; and all the products, rents and income of such real estate of every kind, during such time, shall vest in such executors and administrators in the same manner as personal property, and shall be deemed, to all intents and purposes, personal property, if such real estate shall not have been specifically devised, nor any directions given by the testator in his will with regard to such estate inconsistent herewith."

pay the debts of the deceased and the expenses of settling the estate. The right of this plaintiff does not exist independently of any obligation on the part of the defendants, but it depends entirely upon some duty resting on them. It would seem that the defendants were obliged to keep the outlet of this pond, and the water in it, in its former condition, so that it might serve as a boundary and an enclosure to the plaintiff's possession. This obligation might arise, either from contract between the parties, or from some peculiar situation of the parties. When the plaintiff's right consists in an obligation on the part of the defendant to observe some particular duty, the declaration must state the nature of such duty. 1 Chitty Pl., 383.

2. There is no allegation that the defendants have injured the plaintiff. The act from which he claims to suffer was committed by one Brownell, in July, 1860; and nearly four years before the plaintiff had any interest in the thing affected. The charge against the defendants is, that they "have wrongfully, unjustly and injuriously kept, maintained and continued the outlet of said pond in the same condition, so deepened and enlarged by the said Brownell, in manner aforesaid." The burden of this charge is, that the defendants have let the matter remain as it was left by Brownell. They simply have done nothing. Nor does it appear that it was their duty to do anything. There is no allegation that the defendants are under obligation to keep, maintain or continue this outlet in the same condition as before it was deepened and enlarged, or that they can do it. It is not shown that the outlet of the pond is on land in the possession of the defendants, nor are any facts averred from which it can be inferred that either the pond or the outlet is under the control of the defendants. *Seymour* v. *Maddox*, 5 Eng. Law & Eq., 265.

3. These defects are not cured by the verdict. They are not cases of a defective or inaccurate statement of title or ground of action, but they are clearly omissions to state any title that will warrant an action or any ground of action. The rule on this subject is that a verdict will aid a defective statement of title or cause of action, but will never assist a

statement of a defective title or cause of action. 1 Chitty Pl., 681 ; *Griffin* v. *Pratt,* 3 Conn., 513 ; *Dale* v. *Deane,* 16 id., 579 ; *Dauchy* v. *Salisbury,* 29 id., 124 ; *Mc Cune* v. *Norwich City Gas Company,* 30 id., 521.

*Tyler* and *Warner,* for the defendant in error.

McCurdy, J. The substance of that part of the plaintiff's declaration on which he recovered is, that as administrator on the estate of Jeremiah Smith he was lawfully possessed of a tract of land lying on the side of Bashan Pond and bounded partly by it ; that as such administrator he had the legal right to the water of the pond for agricultural and domestic purposes, especially for watering his cattle, and for forming in part the boundary and enclosure of the tract ; and that he had the legal right to have the water kept at a certain height for these purposes ; that during the life of said Smith one Brownell, unlawfully and against the will of said Smith, deepened and enlarged the outlet of the pond, whereby it was drained and the water lessened about six feet below the height at which it should have been kept ; that the defendants with intent to injure the plaintiff in the premises have wrongfully kept, maintained and continued the outlet so deepened and enlarged ; that he has thereby been injured in his possession of the land, and in the use of the water for the purposes aforesaid, and his boundary has been destroyed, and his cattle have strayed, and the land has been exposed to depredation, and he has been obliged to build an expensive fence.

The defendants insist that the declaration is insufficient to sustain the verdict, and assign various reasons.

One is that it does not appear that the estate was in course of settlement when the suit was commenced or when the injury occurred ; and again, that it does not appear that the land was or is a part of the estate, nor that the same was not specifically devised, nor that said Smith died intestate.

The declaration alleges that the plaintiff is administrator on the estate, and as such has lawful possession of the land. This averment includes and imports *prima facie* all the condi-

tions of legality.  Even if it had been proper to have stated the facts from which the lawfulness of the possession was to be inferred, yet the omission is a mere want of particularity in the mode of setting out the title, and the defect is cured by verdict.

Another reason assigned is of a more serious character.  It is that the declaration does not charge that any positive acts were done by the defendants; that it alleges that Brownell made the excavation and that the defendants have done nothing but to let it alone, without setting out any duty or obligation on their part to interfere or restore it to its original condition.

But the words of the declaration, as it seems to us, import much more than this.  By a fair construction they impute to the defendants acts done directly by themselves.  The language is, that the defendants "*kept, maintained* and *continued* the outlet.*"  In ascertaining the full meaning of this we must take into consideration the tendency, the incidents and the effects of such an excavation.  Although in some cases the banks and bottom may remain unaltered, yet in very many others they are subject to great and continual change. The sides cave in by their weight; they are washed down by the rains; they are thrown down by the frosts; rocks, stones and other obstructions are carried in, and bars are formed at the mouth.  This operation of the elements requires to be counteracted by human endeavors.  To " keep, maintain and continue" the outlet, that is, the channel, for the water to run free and clear at the increased depth, must be supposed to have necessitated direct and positive efforts—constant labor, digging and clearing out.  Under this declaration such acts may have been proved, and they probably were, to an extent which will justify the verdict.

We think the declaration is sufficient and that the judgment should be affirmed.

In this opinion the other judges concurred.